Next case for argument, Varsamis v. Iberia, and Mr. Williams. Oh, it's the same, the same pairing. Oh, that's convenient. Thank you, Your Honors. May it please the Court again. Now the question in this case, besides the questions we've already discussed, is whether passengers are entitled to rely on the conditions of the airline. Can we go through this? I asked my same question. Yes, and I would give your same answer. Okay, we're fine. And to that, to that point, the language there is, as established in the European Parliament and Council Regulation, the compensation is fixed in the event of a flight cancellation unless the latter is due to extraordinary circumstances. Well, and here I go again. Maybe you can just listen to the recording. No, it seems to me that your argument essentially treats co-chairing and interline agreements as the same thing, but however similar they may look in terms of how a passenger perceives them, they're just not the same thing to the airlines involved, are they? That they are not. I mean, there is a very technical distinction in the aviation industry. I'm sure my opposing counsel can talk all about it, but on an apparent authority, a theory which is from the perspective of the passenger, it appears to the passenger that the ticketing airline is acting on the authority of the operating carrier to book the flight. The documents in the record show that each document said that the, that America was acting as Iberia's agent. There are three documents that issue the American conditions of carriage, the American foreign tariff, Iberia's conditions of carriage. Each say that the ticketing carrier acts as an agent for the operating carrier. The American ticket refers the passenger specifically to the operating carrier's guidelines to the contract that the operating carrier issues. But as I understand it, Americans' ability to participate in a co-chairing arrangement was conditioned on Americans' agreement to accept responsibility for a flight operated by its co-chairing partner. Doesn't that address the contractual obligation? America has a contractual obligation. We're not saying that there's no contract with America. And we're also not saying that there's actual authority on the part of Iberian American. What we are saying is that if you apply the apparent authority principle from the perspective of the passengers, it was reasonable for them to believe that American was acting as Iberia's agent in booking the flight. And the District Court, what it found is that the foreign tariff is the applicable document. And it got to that by the following analysis. First, it says that the American conditions of carriage do not apply because they apply only to domestic carriage, excuse me, only to domestic carriage. And then the conditions of carriage direct you to the foreign tariff. However, if you read through the entire foreign tariff, it tells you that the foreign tariff applies only to flights that are performed by American Airlines, not to flights that are performed by other airlines. Second, the foreign tariff also contains a number of conditions that leave American discretion as to how flights are to be operated. For example, the tariff which the District Court applies says that if someone wants to board by a stretcher that American has to approve that action. Obviously, Iberia is not going to consult with American to determine whether someone can board a stretcher on its own planes. It applies its own policies and its own conditions of interline distinction. The foreign tariff discusses that. It defines interline to mean transportation on the services of more than one carrier. Well, how do you square your position in this case with your position in the last case? Just different contractual language or what? Well, they're opposite situations. I mean, there's no question the operating carrier here was Iberia. There aren't the same factual nuances in this case as there are in the Lufthansa case. The real question... Well, it was clear in the Lufthansa case that Augsburg was the operating carrier. Excuse me? It was clear in the previous case that Augsburg was the operating carrier. If you look to the terms of the ticket alone. That's exactly what the German agency found. Baumeister filed a claim for the ground that Augsburg was the operating carrier. And you would expect the next thing that would happen would be a claim against Augsburg, which never happened. I believe if you look at the record, the complaint that Lufthansa responded to, Lufthansa responded by saying that Augsburg was the operating carrier. The National Enforcement Board responded without any comment or any reason for dismissing. I mean, that is an administrative board that really doesn't give reasons for its decisions to sanction or not sanction an airline. But again, and this I feel like this is obviously the overriding question here, whether the Delta decision applies to this case. The claim here is that, and initially the way we brought these cases was as a breach of contract claim. We conditions of carriage say you must pay compensation. The contract refers to EU 261 to determine what compensation is due and when compensation is due, but it doesn't affect the cause of action for that breach of contract. If that contract is breached, meaning that if the flight is canceled, if there's no extraordinary circumstances, and if the distance requirements are met, then you refer to EU 261 to determine what compensation is due. But the reference to the cause of action. The, so in the Iberia case, referring to the Iberia case, the two points I'd like the court to take away is one, there is a relationship between Iberia and the Varsamis is contrary to what the airline has argued, and two, the only document that can apply when you read through the entirety of the documents is the Iberia conditions of carriage, and that's really intuitive, I think. I think that's the way we would think it would operate. If you're flying on an airline, you would refer to that airline's conditions of carriage to determine what baggage you can bring on, what time to check in, and other things of that nature. If the court has no further questions, I'll reserve my time. Okay, thank you Mr. Williams. Mr. Battista? If it pleases the court, once again, Anthony Battista for Iberia. Do you represent all the airlines in the world? I wish I did, Your Honor. Only those who have 250 euro disputes. Now what counsel would like the court to believe is that the Department of Transportation has taken a different viewpoint, and they, in a co-chair situation, the Department of Transportation has issued regulations requiring the application of the marketing carrier's conditions of contract, and that would be American Airlines in this case. In addition, the Varsamis is clearly, they testify that they clearly intended to contract with American Airlines frequent flyer, and he testified that he went on the American Airlines website, and he purchased the tickets from American Airlines for round-trip transportation. But what about paragraph 9 in the American Airlines tariff? Liability of carrier for damages shall be limited to occurrences on its own line, except in the case of checked baggage. The carrier issuing a ticket or carriage over the lines of another carrier does so only as agent. The key word in that paragraph is online. This ticket was purchased as an American Airlines flight. It has an American Airlines ticket number, therefore it is online, and American Airlines assumes responsibility. It's hard to describe this as an Correct, Your Honor. And if we look at the actual itinerary and the tickets that are issued, the co-chair is considered a issuance of a ticket on the carrier's own line, and if we look to the notice for proposed rulemaking from the Department of Transportation, it defines a co-chair agreement. Now co-chairing only came into effect in the mid-1990s, and this NPRM, notice of proposed rulemaking, was from 1994. And if I could just read the definition of a co-chair, it's the term given to a common airline industry marketing practice, where by mutual agreement between cooperating carriers, at least one of the airline designates codes used on a flight that is different than of the airline operating the aircraft. In one version, two or more airlines use their own designated codes on the same aircraft. What is the force to give to this last line in the paragraph, a carrier issuing a ticket or checking baggage for carriage over the Correct. Iberia would have checked the passengers' baggage in Rome for the transportation to Madrid, and they were acting as agent for American Airlines because American Airlines... But it's still another carrier, right? Well, it's another carrier, it does so only as agent. So... For purposes of the Varsimises, Iberia is an agent of American Airlines in providing that transportation to the Varsimises. But wasn't American issuing the ticket? American issued the ticket, that is correct. They are the marketing carrier. But it says the carrier issuing the ticket becomes the agent of the other carrier, of the other carrier. That would be an interline scenario, and that would be ticket counter, and you wanted to purchase a ticket for a route... But I understand, isn't Iberia another carrier? American issues the ticket, goes over the lines of another carrier, Iberia, and that makes the ticket issuer, American, just an agent. Well, in this case, what the co-chair agreement says is American Airlines actually purchases a block of seats on Iberia's flight. So in that aircraft, there's going to be a hundred seats, for sake of this discussion, that are American Airlines seats. So you're saying another provision preempts this? The provision you're referring to is within American Airlines tariff, is that correct, Your Honor? Yeah. That tariff, the provision that you're reading, governs interline transportation. We don't have a situation where interline transportation is being governed. We have a situation that involves code sharing. What does interline transportation mean? Interline transportation is when an airline, as an analogy, acts as a travel agent for another airline. So if American Airlines, say, doesn't provide service from Rome to Madrid, it can sell a ticket on Iberia for that transportation. In that case, you would only have an Iberia-designated code, meaning IB, the two-letter IATA code indicating the Iberia flight. And in that case, you have an interline situation where American is acting as a, quote-unquote, travel agent for Iberia. In a code share scenario, what happens at first is American enters into an agreement with Iberia to sell and take responsibility for a certain amount of seats on a particular flight. That sounds like a travel agent. Well, but they're American seats, so American will receive the profit or loss for selling a person. What do you mean by American seats? They're American Airlines seats to be sold by American Airlines. But they're on the Iberian plane. Correct, but that's the agreement. Well, why doesn't that make American Airlines like a travel agent? Because they're selling it for their own benefit. In the interline circumstance, Iberia reaps the benefit. Iberia receives the profit and American only receives a service fee. In the code share situation, American sets the fare for those seats and receives its own profit. And that's why the DOT regulated the difference between interline agreements and code share agreements, because the DOT saw this as an important distinction and they set requirements for liability. And the DOT requires the marketing carrier to be liable and its contract of carriage to govern any code share situation. And this began in 1994. The case is cited in my colleague's brief. Well, this isn't actually in the tariff, is it? Is it a point that the tariff was superseded by this interline agreement? Well, the contract of carriage includes various documents, one of which, for international transportation, is indeed the tariff. And the other document would be the conditions of carriage itself. Now, it's also important to note that the Varsamis' did have alternative remedies in this case. They did have a remedy against Iberia as the operating carrier, which could have been brought in the European Union, and they also had remedies under the Montreal Convention against both Iberia and American Airlines for actual damages sustained for the delay in transportation. But they disregarded and did not take advantage of those remedies and instead they opted to bring an action under EC 261 in the United States simply because of the class action possibility. So the Iberian conditions of carriage says the same thing as the American tariff. An air carrier issuing a ticket for carriage over the lines of another air carrier does so only as an agent. Well, isn't that a description of what American is doing? It's issuing a ticket for carriage over Iberian lines? Well, I guess the best way to explain this is maybe looking towards the actual passenger ticket, because the key word here is over the lines of another carrier. In the case with the Varsamis', it's actually over the lines of American Airlines. It's not a separate carrier. American Airlines sold this ticket as a flight on American Airlines between Rome... Well, it says American Airlines operated by Iberia, doesn't it? Yes. Well, that's just, you know, like the contract in the other case, isn't it? Operated by another airline. The difference... That becomes the operating... What's the difference? The law in the European Union states that the operating ticket is 261 for any damages. The law in the United States is when you have a code share agreement, the contract of carriage of the marketing carrier shall apply. And the Department of Transportation further states that the marketing carrier will issue the tickets for transportation online, meaning if American Airlines sells a ticket, they are selling it on their own line. And that's straight out of the definition from the Notice of Proposed Rulemaking by the Department of Transportation. The Department of Transportation further requires the marketing carrier to take full responsibility for any liability arising out of the flights. And in this case, that liability arises out of American's contract of carriage as well as the Montreal Convention. But it does not arise out of EC-261 based on Volodovsky, and there being no direct right of action under EC-261 in the United States. Americans' conditions of carriage are very similar to Liberia's, aren't they? America will act as an agent to issue tickets and book reservations, etc., via other carriers. Right? So there's America being an agent for the operating carrier. Why isn't that applicable to this case? Liberia's conditions of carriage are not applicable because the Barsamus never entered into an agreement with Liberia. They purchased the tickets on American Airlines' website, and there was never any intent to get to be bound by any contract with Liberia. It was always the intent to be bound by American Airlines' contract. Wasn't that true in the Lufthansa case also? In the Lufthansa case, the ticket was purchased as part of the agreement between Mr. Baumeister's employer Fraunhofer and Lufthansa. So it was purchased through Lufthansa, and Lufthansa's contract of carriage applied. It's actually the same. In the Baumeister case, Baumeister purchased through Lufthansa. In the Barsamus case, Barsamus purchased through American Airlines. I'm having trouble seeing why the operating carrier shouldn't be liable in both cases. The operating carrier in the Liberia case should be liable under EC 261. Then why shouldn't it be liable in the first case? In the Lufthansa case, Augsburg was the operating carrier, and they should be liable under EC 261. But that action should be brought to the European Union based on Volodovsky. The same thing applies in Barsamus. Barsamus purchased the ticket with American Airlines, but Liberia operated the flight from Rome to Madrid. Therefore, because Liberia was the operating carrier, there is a viable cause of action under EC 261. But because of Volodovsky, it cannot be brought in the United States. It has to be brought in Europe. With respect to American Airlines, the Barsamus have a right of action under American's conditions of carriage, which do not incorporate EC 261, or they have a cause of action under the Montreal Convention, which they never pled. Okay. Well, thank you, Mr. Batista. Mr. Williams, do you have anything further? I have just two points, one that's specific to this case and one that covers both. The opposing counsel said that code sharing began in 1994. That would mean that agency law effectively ended in the airline sphere in 1994. I mean, the agency application can't apply on the technical distinctions that the aviation industry uses. Wait, could you speak a little more slowly and distinctly? I didn't really understand what you said. Opposing counsel said that code sharing began in 1994. Under the rule, they would apply. There's never an agency relationship when there's a code share flight. There always is when there's an interline flight. So agency law would have ended in 1994 if their rule applies. I don't think that is the way agency law works. On my second point, and this again goes to Judge Easterbrook's point, which if he's correct, the rest of the conversation has been superfluous. The holding of EU 261, and this is the last sentence of the case, is that we conclude that EU 261 is not judicially enforceable outside the courts of EU member states. We are not trying to enforce EU 261. We are trying to enforce the contracts which incorporate EU 261. The airlines did not have to incorporate the terms of the law. They did not have to make an obligation voluntarily to pay compensation according to EU 261's terms. But these two airlines did. We had several suits that did not in the district court and we couldn't appeal on that ground because it would have been frivolous to claim that we had a case after EU 261 was decided by this court not to have an independent cause of action. But the cause of action is the contract the airlines voluntarily agreed to pay EU 261 compensation. This was discussed in depth in the district court regarding ADA preemption. The district courts uniformly found that, with maybe one exception, that Wolin's exception applies to not preempt our claims under breach of contract because the airlines voluntarily agreed to pay compensation according to EU 261. For that reason, there is a separate cause of action. Contract is enforceable in the United States. EU 261 directly is not enforceable in the United States under the Volodarsky case. I would respectfully request that the court reverse the grant of summary judgment on both of these cases. Thank you. Thank you very much Mr. Williams and thank you Mr. Batista as well.